FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 29 2014

JAMES N. ~~~EN, Clerk
By: _____, Clerk
Deputy Clerk

# IN THE UNITED STATES DISRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

TWT

DEMETRIUS NICKENS  *
PO Box 931292  *
Norcross, Georgia 30003
    **Plaintiff**  *
Vs.
  *

JARVIS & COHEN, INC.,  *
1201 Colvin Boulevard
Buffalo, New York 14223  *

  *
Serve: Spiegel & Utrera PA. P.C.
1 Maiden Lane, 5th Floor  *
New York, New York 10038

  *
And
PDL VENTURES, LLC  *
AKA PDL TECHNOLOGIES, LLC
AKA PDL VENTURES  *
AKA OUTBACK BUCKS
AKA HIGH COUNTRY LOANS  *
AKA IMPACT CASH, LLC
AKA PDL TECHNOLOGIES  *
AKA ROCKY BOY TECHNOLOGIES,
  LLC  *
AKA ROCKY BOY VENTURES
AKA ROCKYBOY TECHNOLOGIES  *
      Serve:
      Chippewa Cree Tribe  *
      RR1 Box 544
      Box Elder, Mt. 59521  *
AND
  *

RED RIVER VENTURES, L.L.C.
Serve: Martin Webb  *

Civil Case No.: _____

1:14-CV-1631

1

And                                                    *

**MARTIN A. WEBB**                                     *
Individually and Professionally
612 E ST                                               *
TIMBER LAKE, SD 57656
                                                       *
And
                                                       *
**PAYDAY FINANCIAL, L.L.C.**                           *
Serve: Martin A. Web                                   *
612 E ST
TIMBER LAKE, SD 57656                                  *

And                                                    *

**SHELLY BOCHICCHIO**                                  *
In her professional and individual capacity
636 North French Road, Suite 3                         *
Amherst, NY 14228
                                                       *
And
                                                       *
**CHRISTOPHER E. HESS**
In His Official and Professional Capacity              *
116 French Oaks Lane
East Amherst, NY 14051                                 *

AND                                                    *

**NATIONAL CHECK ARBITRATION**                         *
**SERVICE, INC**
Serve:  President and Chief                            *
636 North French Road, Suite 4
Amherst, NY 14228                                      *

AND                                                    *

**JASON T. SAMER**
**Aka Investigator Mike**                              *

2

2664 Eggert Road
Tonawanda, NY 14223                           *

                                              *

**INVESTIGATOR VICTORIA**
**SALOTO** `                                  *
Serve: 4430 Peachtree Rd NE STE 10B,
Atlanta, GA 30319
                                              *

**INVESTIGATOR MS STRONG**
Serve: 4430 Peachtree Rd NE STE 10B,          *
Atlanta, GA 30319
                                              *

AND
                                              *

**Law Offices of Bailey and Rowe Associates**
*Aka* Berkley Hughes
*Aka* Reynolds, Hill, and Associates          *
*Aka* Berkley and Associates
*Aka* Kaufmann and Associates                 *
*Aka* Sanderson Blaine & Associates
*Aka* Blaine and Associates                   *
*Aka* McKenzie Reid Associates
*Aka* Kennedy, Kline, & Associates            *
*Aka* Piedmont Investigations and Procurement
*Aka* Raffino, Garrison, & McCoy              *
*Aka* Greenman, Schwartz & Associates
*Aka* McCoy Law Group                         *
*Aka* Salem Associates
*Aka* Reynolds and Associates                 *
*Aka* Ryan, Carter and Fields
*Aka* Berman, Maxwell and associates          *
*Aka* DOF Investigations
*Aka* Vaughn & Associates                     *
*Aka* Bailey & Rowe
*aka* Nationwide Asset and Recovery           *
Serve: 4430 Peachtree Rd NE STE 10B,
Atlanta, GA 30319                             *

**AND**

3

|   |   |
|---|---|
| | * |
| **David S. Marchiano** | |
| 308 Brookside Terrace | |
| Tonawanda, NY 14150 | * |
| | |
| **AND** | * |
| | * |
| **JANE DOE** | |
| **JOHN DOE** | * |
| | * |
| Defendants' | |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

## COMPLAINT AND JURY TRIAL PRAYER

NOW COMES, DEMETRIUS NICKENS, representing himself, (hereinafter referred as "Plaintiff"), sues the above-captioned Defendant(s), in response to Defendant(s) numerous, willful and intentional violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692 et seq., Georgia Fair Business Practices Act, In support, Plaintiff states:

1. This is an action for statutory damages and attorney's fees brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U .S.C. § 1692 et seq., and treble damages, and costs of this action brought pursuant to Georgia's Fair Business Practices Act ("FBPA"), O .C.G.A . § 10-1-391 et seq.

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367 for pendent state law claims.

3. Venue is proper in this district because the acts and transactions occurred here, Plaintiff resides here, and Defendant placed telephone calls into this District.

4. Plaintiff is a citizen of the United States of America, and resides in Norcross, Georgia. At all times relevant herein, the acts complained of occurred in Maryland & Georgia and accordingly, this Court have jurisdiction to hear the complaint as alleged. Furthermore, Plaintiff is a natural person and is a "consumer" as defined by the FDCPA.

5. Defendant Jarvis and Cohen, Inc., is a New York Corporation, who upon information and belief conducts debt collection business in all fifty (50) states including Georgia. Furthermore, Defendants principal business purpose is the collection of consumer debts. Defendants are Debt Collectors as described in 15 U.S.C. 1692, et seq.

6. Defendant PDL Ventures, et al, is a Montana unincorporated business, who upon information and belief conducts  pay day loan financing and debt collection business in all fifty (50) states including Georgia. Furthermore, Defendants principal business purpose is the collection of consumer debts. Defendants are Debt Collectors as described in 15 U.S.C. 1692, et seq.

5

7. Red River Ventures LLC is South Dakota limited liability company with is principal place of business at 612 E Street, Timber Lake South Dakota. In 2009, Red River advertised and offered payday loans to consumers through the internet under the name of Outback Bucs. Red River Ventures transacts or has transacted business in this district and through the United States., The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

8. Defendant Martin Webb is the owner of Red River Ventures, LLC, PDL Ventures and Payday Financial LLC. Mr. Webb is a citizen of the United States and resides in Timber Lake South Dakota. At all times relevant, The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

9. Pay Day Financial, LLC is South Dakota limited liability company with is principal place of business at 612 E Street, Timber Lake South Dakota. In 2009, Pay Day Financial LLC advertised and offered payday loans to consumers through the internet under among others the name of Outback Bucs. Pay Day Financial LLC transacts or has transacted business in this district and through the United States., The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

10. Defendant Shelly Bochicchiois the owner of National Check Arbitration. Ms. Bochicchiois is a citizen of the United States and resides in New

York. At all times relevant, The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

11. Defendant Christopher Hess the owner of National Check Arbitration. Mr. Hess is a citizen of the United States and resides in New York. At all times relevant, The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

12. Defendant National Check Arbitration, Inc., is a New York Corporation, who upon information and belief conducts debt collection business in all fifty (50) states including Georgia. Furthermore, Defendants principal business purpose is the collection of consumer debts. Defendants are Debt Collectors as described in 15 U.S.C. 1692, et seq.

13. Defendant Jason T. Samer, is a resident of Erie County, New York. At all times relevant, The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq.

14. Investigator Victoria Saloro is an employee of The Law Offices of Bailey and Rowe, et al . The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq. She is sued in her individual and official capacity.

7

15. Investigator Strong is an employee of The Law Offices of Bailey and Rowe, et al. The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq. She is sued in her individual and official capacity.

16. Law Offices of Bailey and Rowe Associates Aka Berkley Hughes,Aka Reynolds, Hill, and Associates Aka Berkley and Associates, Aka Kaufmann and Associates Aka Sanderson Blaine & Associates,Aka Blaine and Associates Aka McKenzie Reid Associates,Aka Kennedy, Kline, & Associates, Aka Piedmont Investigations and Procurement, Aka Raffino, Garrison, & McCoy, Aka Greenman, Schwartz & Associates,Aka McCoy Law Group, Aka Salem Associates, Aka Reynolds and Associates, Aka Ryan, Carter and Fields, Aka Berman, Maxwell and associates, Aka DOF Investigations, Aka Vaughn & Associates, Aka Bailey & Rowe and aka Nationwide Asset and Recovery. Defendant Bailey, et al , who upon information and belief conducts debt collection business in all fifty (50) states including Georgia. Furthermore, Defendants' principal business purpose is the collection of consumer debts. Defendants are Debt Collectors as described in 15 U.S.C. 1692, et seq.

17. Defendant David S. Marchiano is the co-owner of National Check Arbitration and Jarvis and Cohen. Mr. Marchiano is a citizen of the

8

United States and resides in New York. At all times relevant, The Defendant is a Debt Collector as described in 15 U.S.C. 1692, et seq. Mr. Marchiano is being sued in his individual and professional capacity.

## First Matter Pertaining to Purported Loan
## (Resolved by Way of Confidential Settlement )

18. On Friday, December 9, 2011, at approximately 2:02 p.m., a male who identified himself as Investigator Mike__, called the Plaintiff's home residence. Mike was later identified as Jason T. Samer as a result of records produced to the Plaintiff by his Internet Service Provider (ISP).

19. Defendant Samer  indicated that he was calling on behalf of the Warrant and Restitution Taskforce of Defendant Jarvis and Cohen regarding a bad check written by Plaintiff to PDL Ventures Outback Cash.

20. Defendant Samer indicated that he was calling to verify residence for Plaintiff so that he could have the warrant served.

21. When asked why he was making threats, Defendant Samer  replied that he would come into Plaintiff's home and place him under arrest. When asked if a letter would be sent reflecting the same, Defendant Samer indicated that the next correspondence Plaintiff received would be criminal summonses to appear in Court.

22. Plaintiff terminated the call.

23.Soon thereafter, Defendant Samer called Plaintiff's residences an additional 5 times back to back.

24.When Plaintiff would ask why he kept calling, Defendant Samer stated **"um hum" um hum".** Although, Plaintiff repeatedly disconnected the line, Defendant Samer continued to call, letting the phone ring in excessively.  Defendant Samer contacted Plaintiff from his personal cellular phone through Cricket Wireless, later identified for records produced to Plaintiff by his ISP.

25.Defendant Samer contacted Plaintiff with the sole intent to harass and oppress as an inducement for him to pay an alleged debt.

26.Defendant Samer's actions was willful and wanton disregard of the standards of Debt Collections in this state.

27.From January 2010 until March 2011, an unidentified female with Defendant National Check Arbitration called Plaintiff's Cellular Phone regarding an alleged debt owed to PDL Ventures Outback.

28.An unidentified female called and stated that she was from the Summons division of Plaintiff's States Magistrate Office and that a warrant of restitution was being filed against Plaintiff.

29.Although Plaintiff requested verification of the debt, the unidentified female continued to call without sending said verification.

10

30. Plaintiff also requested that the unidentified female put all commutations in writing and dispense with calling Plaintiff. The unidentified female did not adhere to Plaintiff's request. Instead she continued to contact Plaintiff telephonically, both at his home and cellular phone, with no other reason put to harass Plaintiff.

31. The alleged debt in question was from a 2008 Payday Loan with RedRiver Ventures, aka, PDL Ventures, aka Outback Bucks, aka Payday Financial.

32. Defendant RedRiver, et al , through their agents, caused this account to be transferred to numerous Collection Companies without licenses or verifiable credentials, for the purposes of harassing through threats of incarceration of Plaintiff and like consumers as an inducement to pay the alleged pay day loan.

33. Defendant Webb had a duty to supervise his agents and breached that duty owed to Plaintiff.

34. Defendant Webb has an established pattern of unscrupulous debt collection activities pertaining to pay day loans.

35. On December 11, 2011, Plaintiff filed suit in the United State's District Court for the Northern District of Georgia.

11

36. On or around January 23, 2011, Plaintiff and Defendants' entered into a confidential settlement agreement resolving all claims mutually against each other.

37. The Defendant's represented in the settlement agreement that they had the authority to dismiss any and all claims against the undersigned.

38. Subsequently, a Notice of Dismissal with prejudice was filed and accepted by this Court.

## (Second Violation)

39. On or around May 27, 2014, Plaintiff received two (2) unsolicited phone calls to his cellular phone and home phone. This automated message stated:" **This message is an attempt to locate an individual by the name of Demetrius Nickens. If you have any information regarding this individual's location you are [u]rged to call our offices immediately or pass our contact information onto the individual. Refer to Case number 2014-316081. You can reach our office at 855-947-7266**".

40. On or around May 28, 2014, the undersigned contacted the number left by the automated machine. A female on the other line identified the business as "Investigations what is your case number".

12

41. The undersigned subsequently provided this information to the unidentified female based on the automated message, the undersigned received.

42. After pulling up the information in her system, the female identified herself as Investigator Victoria Saloto of The Law Offices of Bailey and Rowe.

43. Investigator Saloto indicated that the undersigned was being charged with Breach of Contract and Malicious Intent to Defraud a Creditor.

44. Investigator Saloto stated they only way to prevent a summonses and complaint from being filed was to pay for a purported debt owed to PDL Ventures.

45. Investigator Saloto represented that as she surmises, that because of the undersigned was being charged with a Malicious Intent to Defraud a Creditor, she could legally request that the undersigned pay 378% or $4,000.00, whichever was greater.

46. Investigator Saloto stated that she would speak with her attorneys and that they would authorize a settlement in the amount of $700.00.

47. The undersigned requested a letter pertaining to the purported debt be faxed or emailed to him.

48.Investigator Saloto stated that she would need to transfer Plaintiff to her payment processing center, which as she indicated, was a separate entity.

49.Investigator Saloto subsequently forwarded the undersigned to this purported payment processing line, wherein an unidentified female answered "Payment Processing please state your first and last name for the record".

50.Plaintiff requested a letter be sent with respect to the alleged debt.

51. The unidentified female confirmed Plaintiff's email address and cellular phone number. She than requested that Plaintiff provide his banking information to pay the settlement.

52.Plaintiff informed her that he wanted a letter before he was going to agree to pay anything.

53.Plaintiff was transferred back to Investigator Saloto.

54.After holding for over ten minutes, Plaintiff disconnected the call.

55.Investigator Saloto contacted Plaintiff telephonically on at least six (6) occasions during the one hour conversation.

56.Each time , Investigator Saloto transferred Plaintiff back to the unidentified payment processing line with the unidentified woman attempting to coerce Plaintiff into providing his banking information.

14

57. Plaintiff requested a letter detailing the account each time he spoke with Investigator Saloto and this unidentified woman. Each time, he had been advised that the letter was faxed and emailed. When questioned further, the unidentified female hung up.

58. Investigator Saloto contacted Plaintiff again telephonically.

59. Investigator Saloto advised that Plaintiff had refused to provide her payment processing company with credit card information. Plaintiff requested a letter be faxed or emailed again. Investigator Saloto stated that if plaintiff did not provide credit card information that matter would proceed and Plaintiff would suffer levies, wage attachments and bank garnishments. Investigator Saloto stated that if Plaintiff would like to go to court, the "attorneys" would be requesting 378% of the debt as a penalty for Plaintiff's Malicious Intent to Defraud a Financial Institution and theft by deception.

60. Investigator Saloto stated that she would need to transfer Plaintiff to her supervisor for a final resolution. Investigator Saloto transferred the undersigned to a female later indentified as Investigator Strong.

61. Investigator Strong stated that she was in the closing department and that Plaintiff's file had been transferred to her to proceed with charges.

15

62. Plaintiff again requested that a letter be sent with regard to the alleged debt. Investigator Strong pretended to text and email Plaintiff a letter and stated that Plaintiff would have three (3) minutes to complete the terms and email back to her with credit card information.

63. Plaintiff began to appeal to Investigator Strong's sense of equity and fair dealing. Plaintiff advised that what she was doing was illegal. Investigator Strong was undeterred. Investigator Strong continued with her illegal threats.

64. Plaintiff and Investigator Strong began to argue about the letter at which time, Investigator Strong terminated the call.

## STATUTORY STRUCTURE OF FDCPA

65.    The FDCPA was passed to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses. 15 U.S.C. § 1692.

66.    Under the FDCPA, a "consumer" is a natural person obligated or allegedly obligated to pay any debt. 15 U.S.C. § 1692a(3).

67.    Under the FDCPA, "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money,

16

property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

68.     Under the FDCPA, a "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another. 15 U.S.C. § 1692a(6).

69.     Any debt collector who fails to comply with the provisions of the FDCPA is liable for any actual damages sustained; statutory damages up to $1,000; and attorney's fees as determined by the Court and costs of this action. 15 U.S.C. § 1692k.

### COUNT I- DEFENDANT(S) CONDUCT RISES TO THE LEVEL OF BREACH OF CONTRACT
**(Jarvis & Cohen, Inc., PDL Ventures, LLC, Red River Ventures, LLC, Martin A. Webb, Payday Financial, LLC, Shelly Bochicchio, Christopher Hess, National Check Arbitration Service, Inc and Jason Samer)**

70.     Plaintiff incorporates all of the preceding paragraphs as if herein restated for reference.

71.     On January 22, 2012, the aforementioned Defendants' entered into a confidential settlement agreement to resolve all claims with respect to a purported debt owed by Plaintiff to PDL Ventures, LLC.

17

72.    Said agreement provided that the Defendants' would discharge and forever forgive the debt alleged to be owed by Plaintiff to PDL Ventures LLC and it's assignee's Jarvis and Cohen, Inc.

73.    The subsequent transfer for collections amounts to a material breach in the terms of the settlement agreement.

74.    Plaintiff has been harmed and has suffered damages as a result of the breach.

WHEREFORE, Plaintiff respectfully request Judgment in the amount of $500,000.00, against each Defendant severally and jointly, plus cost, pre-judgment interest, post-judgment interest and attorneys fee's (in the event that Plaintiff retains counsel) and for such other and further relief as this Court may deem just and appropriate.

## COUNT II- DEFENDANT(S) WERE NEGLIGENT IN THE ASSIGNMENT OF THE DEBT TO THIRD PARTIES
### (Jarvis & Cohen, Inc., PDL Ventures, LLC, Red River Ventures, LLC, Martin A. Webb, Payday Financial, LLC, Shelly Bochicchio, Christopher Hess, National Check Arbitration Service, Inc and Jason Samer)

75.    Plaintiff incorporates all of the preceding paragraphs as if herein restated for reference.

76.    On January 22, 2012, the aforementioned Defendants' entered into a confidential settlement agreement to resolve all claims with respect to a purported debt owed by Plaintiff to PDL Ventures, LLC.

18

77.     Said agreement provided that the Defendants' would discharge and forever forgive the debt alleged to be owed by Plaintiff to PDL Ventures LLC and it's assignee's Jarvis and Cohen, Inc.

78.     The subsequent transfer for collections amounts to a material breach in the terms of the settlement agreement.

79.     Defendants' agents subsequently contacted Plaintiff telephonically in an attempt to collect a debt that was not legally owed.

80.     Plaintiff suffered severe injuries to her person as a result of Defendants' and its agents.

81.     In a scheme to promote ill will and despite that the debt was no longer legally enforceable, the Defendants' caused the debt to be assigned, transferred or sold to unknown third parties who continued the illegal harassment of Plaintiff.

82.     The Defendants' acted with ill will to the detriment of Plaintiff.

83.     Because of Defendants'. ill will, the Plaintiff was caused to sustain injury, including but not limited to the following injuries; emotional, financial and physical damages.

84.     The Defendants' were negligent with no want of due care from the Plaintiff.

19

WHEREFORE, Plaintiff demands judgment against the Defendants in the amount of $1,000,000.00 (One Million Dollars). Plaintiff also prays for punitive damages in the amount of $2,500,000.00 (Two Million Five Hundred Dollars) .

## COUNT III- DEFENDANT(S) CONDUCT VIOLATED THE
## FAIR DEBT COLLECTIONS PRACTICES ACT
## (ALL DEFENDANT(S))

85.     Plaintiff incorporates all of the preceding paragraphs as if herein restated for reference.

86.     The Defendant(s) violated the FDCPA based on the following:

    a.     Defendant(s) violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, and abuse Plaintiff.

    b.     Defendant(s) violated §1692d(5) of the FDCPA by causing a telephone to ring repeatedly and continuously with the intent to annoy, abuse, and harass Plaintiff.

    c.     Defendant(s) violated §1692d(6) of the FDCPA by placing collection calls without disclosing his/her identity.

    d.     Defendant(s) violated §1692e of the FDCPA by making false, deceptive, and misleading representations in connection with debt collections.

e.   Defendant(s) violated §1692e(2) of the FDCPA by misrepresenting the legal status of the alleged debt.

f.   Defendant(s) violated §1692e(4) of the FDCPA by threatening non-payment would result in a lawsuit being filed.

g.   Defendant(s) violated §1692e(5) of the FDCPA by threatening to take action that cannot be legally taken or is not intended to be taken.

h.   Defendant(s) violated §1692e(10) of the FDCPA by making false representations and engaging in deceptive means to collect the alleged consumer debt.

i.   Defendant(s) violated §1692f of the FDCPA by engaging in unfair and unconscionable means to collect or attempt to collect the alleged debt.

j.   Defendant(s) violated §1692g(a)(1-5) of the FDCPA by failing to provide appropriate notice of the debt within five (5) days after the initial communication.

k.   Defendant(s) violated §1692g(a)(1-5) of the FDCPA by failing to advise that they were debt collectors and that any information obtained would be used for that purpose.

21

l.     Defendant(s) violated §1692g(a)(1-5) of the FDCPA by failing to provide proof of the debt within thirty (30) days and refusal to provide proof of the debt.

**WHEREFORE**, Plaintiff respectfully prays judgment against all Defendant(s), severally and individually for:

a. One Thousand Dollars for Each Violation Per Incident ($1,000.00) as allowed by 15 U.S.C.1692(k) plus compensatory damages of Two-Hundred Thousand Dollars ($200,000.00);

b. For such other and further relief as may be deemed just and proper

### COUNT FOUR: VIOLATIONS OF
### GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (All Defendants)

87.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein .

88.     The purpose of the FBPA is "to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state ." O.C .G.A. § 1 0-1-391(a) .

89.     A violation of the FDCPA also constitutes a violation of the FBPA . 1st Nationwide Collection Agency, Inc. v. Werner, 288 Ga.App. 457, 654 S.E.2d 428 (2007).

90.     Defendants acts violated the FBPA .

22

91. Defendants' violations of the FDCPA and FBPA were intentional .

92. Pursuant to the FBPA, Defendant is liable to Plaintiff for an award of three times Plaintiff's damages .

93. Pursuant to the FBPA, Plaintiff is entitled to an award of reasonable attorney's fees and expenses of litigation.

## COUNT FIVE- RESPONDEAT SUPERIOR LIABILITY, NEGLIGENT HIRING/RETENTION/TRAINING, GROSS NEGLIGENCE IN SUPERVISION
## (DEFENDANT'S RED RIVER, PDL, WEBB, BOCHICCHIO, HESS, JARVIS & COHEN, NATIONAL ARBITRATION, DAVID S. MARCHIANO , LAW OFFICES OF BAILEY AND ROWE ASSOCIATES JANE AND JOHN DOE)

94. Plaintiff incorporates the above paragraphs as if herein restated for reference.

95. The acts and omissions of Defendant's employee who acted as an agent for Defendant and communicated with Plaintiff as described herein, was committed within the time and space limits of the employee's agency relationship with the employee's principal, Defendant.

96. The acts and omissions by Defendant's employee who acted as an agent for Defendant was incidental to, or of the same general nature as the responsibilities this agent was authorized to perform by Defendant in collecting consumer debts.

23

97.    By committing these acts and omissions against Plaintiff, Defendant's employee and agent was motivated to benefit the employee's principal, Defendant.

98.    Defendant is therefore liable to Plaintiff through the doctrine of respondeat superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employee, including but not limited to violations of the FDCPA and GFBPA.

**WHEREFORE**, Plaintiff respectfully prays judgment against all Defendant(s), severally and individually for:

a.    Compensatory damages of Nine Hundred Thousand Dollars ($900,000.00);

b. For such other and further relief as may be deemed just and proper

### COUNT SIX: GROSS NEGLIGENT DEBT COLLECTIONS
### (All Defendants)

99.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein .

100.    Defendants were aware that it is illegal in Georgia and Federal Law to engage in the conduct describe herein. Plaintiff relied upon the protection

24

afforded him under Georgia and Federal Law. It was foreseeable that the Defendant's continuation of their illegal conduct would cause damage to the Plaintiff. Defendants owed the Plaintiff a duty and special duty of reasonable care in the manner in which they attempted to collect the alleged debt.

101. Defendants Action constitute a crime under O.C.G.A. 16-5-60(b).361, O.C.G.A. 16-10-23 (2010) 16-10-23 and New York General Business Law Article 29H.

102. Defendants actions and omissions as described herein constitute negligence in that Defendants owed Plaintiff a duty and a special duty of reasonable care in the collection of the alleged debt, and said duties were breached, and said breaches were the proximate cause of damages suffered by Plaintiff.

103. Defendants actions and omissions as described herein constitute gross negligence in that Defendants owed Plaintiff a duty and a special duty of reasonable care in the collection of the alleged debt, said duties were breached, said breaches were the proximate cause of damages suffered by Plaintiff, and Defendants actions and omissions demonstrate a want of scant care and an indifference to the rights of Plaintiff and others. Defendants actions were willful, malicious and wanton Defendant's actions were highly unreasonable and demonstrate an extreme departure from ordinary care.

104. Plaintiff has been damage by the Defendant's illegal and criminal conduct as alleged herein.

105. Plaintiff is entitled to punitive damages for the actions and omissions of the Defendants herein described.

**WHEREFORE**, Plaintiff respectfully prays judgment against all Defendant(s), severally and individually for:

a. Compensatory damages of Two Million Dollars ($2,000,000.00);

b. Punitive Damages of Ten Million Dollars ($10,000,000.00)

b. For such other and further relief as may be deemed just and proper

## COUNT SEVEN- THE DEFENDANTS' CONDUCT AMOUNTED TO AN INTENTIONAL, WILLFUL AND WANTON VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ. (ALL DEFENDANTS')

106. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein .

107. Defendants' have repeatedly utilized a robo caller or automatic dialer to call Plaintiff's cellular telephone and home phone, which violated Plaintiff's privacy rights under federal law.

108. DEMETRIUS C. NICKENS individually, brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants' in willful negligently and/or intentionally contacting Plaintiff on his cellular telephone and home phone, in

26

violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's privacy.

109. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by him.

110. Plaintiff is informed and believes that at all relevant times, Defendants' were acting as an agent and/or employee of each of the other was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other john and jane doe Defendants''. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other unknown john and jane doe Defendants'.

111. The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

112. In enacting the TCPA, Congress intended to give consumers a choice as to

27

how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> **"[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion".**

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at\* 4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

113.   Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

114.   As *Judge Easterbrook* of the *Seventh Circuit* recently explained in a TCPA case regarding calls similar to this one:

> The Telephone Consumer Protection Act … is well
>
> known for its provisions limiting junk-fax transmissions. A less-litigated part of the Act curtails the use of

28

> automated dialers and prerecorded messages to cell
> phones, whose subscribers often are billed by the minute
> as soon as the call is answered—and routing a call to
> voicemail counts as answering the call. An automated call
> to a landline phone can be an annoyance; an automated
> call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

115.    Plaintiff had NEVER given his express permission for Defendants' to contact him telephonically. However, despite NEVER expressly approving Defendants' to contact him, assuming he did, he rightfully revoked such authorization. In Re: *Gager v. Dell Financial Services LLC*.

116.    The foregoing acts and omissions of Defendants' constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

117.    As a result of Defendants' negligent violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

118.    Plaintiff is also entitled to and seek injunctive relief prohibiting such conduct in the future.

**WHEREFORE,** Plaintiff prays Award for Damages against the Defendants':

a.      As a result of Defendants'' negligent violations of 47 U.S.C. § 227(b)(1),

b. Plaintiff seeks for himself $500.00 statutory damages, for each and

every violation, pursuant to 47 U.S.C. §227(b)(3)(B).

c. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting

such conduct in the future.

D Any other relief the Court may deem just and proper

## COUNT EIGHT- THE DEFENDANTS' KNOWINGLY AND WILLFULLY VIOLATED THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 ET SEQ. (ALL DEFENDANTS')

118. Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

119. The foregoing acts and omissions of Defendants' constitute numerous

and multiple knowing and/or willful violations of the TCPA, including but not

limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et

seq.

120. As a result of Defendants'' knowing and/or willful violations of 47

U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $1,500.00 in

statutory damages, for each and every violation, pursuant to 47 U.S.C.

§227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

121. Plaintiff is also entitled to and seek injunctive relief prohibiting such

conduct in the future.

30

WHEREFORE, Plaintiff prays for an Award of Damages against the Defendants' for Claim II as follows:

a. As a result of Defendants'' knowing and/or willful violations of 47 U.S.C. § 227(b)(1), Plaintiff seeks for himself $1,500.0 in statutory damages, for each and every violation, pursuant to 47 U.S.C.§ 227(b)(3)(B).

b. Pursuant to 47 U.S.C. § 227(b)(3)(A), injunctive relief prohibiting such conduct in the future.

c. Any other relief the Court may deem just and proper.

## COUNT NINE-THE DEFENDANTS' CONDUCT AMOUNTED TO WILLFUL AND INTENTIONAL INVASION OF PLAINTIFF'S PRIVACY . (All defendants')

122. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

123. Defendants' and/or their agents intentionally, willfully and gross negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Plaintiff, namely, by repeatedly and unlawfully attempting contacting Plaintiff on his cellular telephone and home phone without his permission, and thereby invaded Plaintiffs' privacy.

124. Defendants' and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course

31

of soliciting services thereby invading and intruding upon Plaintiff's right to privacy, thus aggravating a pre-existing condition.

125. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs.

126. The conduct of Defendants' and their agents, in engaging in the above described illegal conduct against Plaintiffs, resulted in multiple intrusions and invasions of privacy by Defendants' which occurred in a way that would be highly offensive to a reasonable person in that position.

127. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendants'.

WHEREFORE, Plaintiff prays for an Award of Damages against the Defendants' for Claim III as follows:

a.     Plaintiff seeks for himself $50,000.00 in damages

b.     Any other relief the Court may deem just and proper.

**JURY TRIAL PRAYER**

Plaintiff f prays a jury trial on all counts herein

Demetrius Nickens

32

Respectfully Submitted,

**DEMETRIUS NICKENS**
**AS HIS OWN ATTORNEY**

PO Box 931292
Norcross, Georgia 30003
404-621-0779
Facsimile: 443-213-1480
demetriusnickens@gmail.com

PLAINTIFF

## CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7 .1(D), this is to certify that the foregoing complies with the font and point setting approved by the Court in Local R. 5 .1(B). The foregoing COMPLAINT was prepared on a computer, using Times New Roman 14 point font.

Respectfully Submitted,

**DEMETRIUS NICKENS**
**AS HIS OWN ATTORNEY**

33